## Edward Murphy v. The Chicago & Alton Railway Company.

### Gen. No. 12,484.

1. CONTRIBUTORY NEGLIGENCE—*when question one of law for the court.* The question of contributory negligence is one of law for the court where the evidence, with all the inferences which can justifiably be drawn from it, shows with clearness, such that reasonable minds must agree without hesitation or dissent, that the injury in question was caused by the contributory negligence of the plaintiff.

2. FOREMAN—*when orders of, not within scope of duties.* A command jokingly given by a foreman, and so understood by a servant, is not such a command as will justify such servant in taking a risk and unnecessarily encountering a danger to his life and limb.

Action on the case for personal injuries. Error to the Superior Court of Cook County; the Hon. ROBERT W. WRIGHT, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1905. Affirmed. Opinion filed June 12, 1906.

**Statement by the Court.** This writ of error is prosecuted to reverse a judgment rendered in a personal injury suit upon a verdict returned by a jury in obedience to the directions of the court.

The case was tried upon a declaration consisting of a single count which avers that the plaintiff (plaintiff in error here) was employed by the defendant as a switchman to work as a member of a switching crew in connection with a certain switching engine, switching cars in defendant's railroad yards; that said switching crew was in charge of a foreman whom it was the duty of the plaintiff to obey and who was not a fellow-servant of the plaintiff, but a vice-principal representing the defendant; that at the time of the injury complained of, the crew were engaged in switching cars and said foreman was on a caboose attached to said switching engine, which in pursuance of said foreman's orders was being run rapidly westward along one of the tracks in said railroad yards, up to and past the point where plaintiff was standing alongside said track; that it was plaintiff's duty and intention in the performance of his work to board said caboose when it reached and was passing him, if it was then running at a proper rate of speed; that said foreman saw the plaintiff so standing some distance away and knew it was plaintiff's intention and duty to board said caboose; that thereupon and in the exercise of his authority as such foreman, he wilfully, wantonly and recklessly directed and caused the speed of said engine to be greatly and unnecessarily increased and to be run up to, towards and past the point where the plaintiff was so standing at such a high and dangerous rate of speed as to make it unusually dangerous for the plaintiff to board the caboose, and in the exercise of his authority as foreman wilfully, wantonly and negligently signaled and directed the plaintiff to board said caboose as it was so passing; that the plaintiff pursuant to said foreman's order and direction, while exercising ordinary care and caution for his own safety, then and there attempted to board said caboose as it was so running past

him, and as a direct result and in consequence of said caboose being so run past him at such a high and dangerous rate of speed, he was thereby then and there thrown under said caboose and on the track and one of his arms was run over and so injured that it became necessary to amputate it.

JAMES C. McSHANE, for plaintiff in error.

WINSTON, PAYNE & STRAWN, for defendant in error; JOHN BARTON PAYNE'and RALPH M. SHAW, of counsel.

MR. JUSTICE FREEMAN delivered the opinion of the court.

It is insisted that the trial court erred in taking the case from the jury and directing a verdict for the defendant, because it was a question for the jury to determine whether the conductor or foreman was guilty of negligence in ordering the engine and caboose run at the rate of speed and under the circumstances shown by the evidence, and in ordering the plaintiff to board the caboose as it is alleged was done; that it was for the jury to determine whether plaintiff exercised ordinary care for his own safety, and whether the defendant was liable for wrongful or negligent exercise of his powers and authority by the conductor or foreman of the switching crew with which plaintiff was working.

It was at the close of the plaintiff's testimony on motion of defendant's attorneys, that the court instructed the jury to find for the defendant. There is no conflict of evidence therefore, and the propriety of the ruling depends wholly upon the plaintiff's story. It appears from his statement that he was a member of a switching crew working in railroad yards of the defendant. He accompanied the switching engine used by his crew and was performing the duties of a field switchman, "throwing switches" under the direction of the foreman. This crew consisted of a foreman, the plaintiff, another switchman and the engineer who ran the switch engine. The accident occurred about four P. M. in the Brighton Park yard. Having attached the engine to a caboose, the rest of the crew started eastward with the

caboose, going about a hundred feet, when the foreman got off and threw a switch to enable the engine and car to go over on the main line of track. He then signaled the engineer to back up, giving the "hard back up sign," walked toward the caboose and got up on its lower step leading up to the platform at the rear end of the car which was nearest plaintiff then "about 75 or 100 feet" away. Standing there he gave the engineer two more "back up" signals "harder" than before, looked back and "started to laugh" and look at plaintiff. These signals to the engineer "meant for the engine to back up rapidly in the direction where" plaintiff was standing. According to plaintiff's testimony, he and the foreman had been in the habit of playing jokes on each other, and both the engineer and the foreman were laughing as the caboose approached the place where plaintiff was standing beside the track, the speed of the engine and car meanwhile constantly increasing. After giving these "hard back up" signals to the engineer, the foreman still looking at plaintiff and laughing, and when about thirty to forty feet away, "made a little motion with his left hand," which the plaintiff interpreted as an invitation to board the rapidly moving caboose, and as plaintiff states "got up to make room for" plaintiff on the platform. The foreman said nothing to plaintiff, however, and there was no other invitation nor order. Plaintiff made up his mind he could get on notwithstanding the speed of the car, and made the attempt. In some way he missed his hold or footing and was thrown down, his arm going under the wheels. This is the whole story so far as material. We deem it apparent from this evidence given by plaintiff himself that the speed of the car was increased by the foreman and engineer as a joke, which plaintiff perfectly understood and appreciated; that the alleged invitation or "command", as plaintiff's counsel desires it to be considered, was a part of the joke and could not reasonably have been otherwise interpreted. Plaintiff estimates the speed of the car "about ten or eleven miles an hour." He states that he had "been in the habit of jumping on and off moving trains ever since I was a

boy." He had often done so during the seven weeks pre-
ceding the accident, and when the trains were moving, as
he says, "from eight to eleven miles an hour." He testi-
fies that "in breaking up trains the engineer would take
signals from me or Savage or Moran (the foreman) just as
the signal was given, and if an emergency arose when it was
necessary to stop the engine I gave the signal to the en-
gineer and he obeyed such signal in any work I was doing."
If plaintiff did not wish on the occasion in controversy to
signal the engineer to slow up so as to enable him to get on
with greater safety, he was at liberty, so far as appears, to
let the car pass him. No emergency existed requiring him
to get on at that time and place. He states what had been
his habit, if the engine came faster than would enable him
to couple a car with safety; " I would let it go; would wait
until it came back. I often gave signals to the engineer to
slow down so I could make a coupling and often gave a
signal for him to stop or slow down so I could make a
switch, and in the performance of any work if I wanted the
engine to slow down I would give the signal." He thought
he could board the car in safety and, as he says, he "cer-
tainly guessed wrong." If he had supposed the speed
such as to make it unsafe for him to attempt to get on, he
would, as he says, have stood and let it pass.

We are of opinion that this evidence, with all the infer-
ences which can be justifiably drawn from it, shows with
clearness, such that reasonable minds must so agree with-
out hesitation or dissent, that the injury was caused by
plaintiff's negligently taking the chances of accident; and
this he did of his own volition and upon his own responsi-
bility. Failing to exercise ordinary care for his own
safety, he cannot recover for consequences of his own neg-
ligence, severe as those consequences are.

We find no evidence justifying the conclusion of negli-
gence contributing to the injury on the part of appellee.
Playing games on each other or joking of the kind here
shown is not within the scope of the duties for which
switching crews are presumed to be employed. Even an

order jokingly given by a foreman and so understood, as the sign alleged to have been given in this case evidently must have been by the employee, is not a command such as would justify an employee in taking the risk and unnecessarily encountering a danger to life or limb, and when injury results permit him to recover from the superior. In giving such joking order, if order it may be called, the foreman cannot be regarded as the representative of the master where the circumstances are such as the evidence in this case discloses.

Finding no error in the record, the judgment of the Superior Court must be affirmed.

*Affirmed.*